[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Trisha Bertram, were married on August 28, 1978 in West Covina, California. The plaintiff has resided continuously in the State of Connecticut for at least one year immediately prior to the date that the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage, Jason Randall Cound, born July 31, 1983; and Courtney Lynn Cound, born August 1, 1987. No other minor children have been born to the defendant wife since the date of the marriage of the parties. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the cause of the breakdown of the marriage is the plaintiff's involvement with another woman. That involvement commenced to be a sexual relationship after the plaintiff vacated the family home on July 4, 1996. Prior to the time he vacated the family home, he was spending time on the phone with this woman.
On one occasion, the defendant overheard a phone conversation in which the plaintiff was talking to his female companion and said "I love you sweetheart, " the plaintiff lied to the defendant as to the name of the person he was talking to. In May of 1996, shortly after that phone call was overheard by the defendant, the plaintiff told the defendant that he did not love her. This was prior to the date the plaintiff vacated the family home.
The plaintiff's female companion was a friend of both the plaintiff and the defendant up until the time the defendant learned that the plaintiff was involved with the friend. The plaintiff's female companion is a married woman with three children, one of whom is a minor who also resides with the plaintiff and his companion. Prior to the time the plaintiff became involved with this companion, he and the defendant were CT Page 10524 able to work out any problems that they may have had within the marriage for the twenty-two years they were married before his companion was in the picture.
The plaintiff is currently splitting rental expenses with his female companion. They also divide equally the utilities and food expenses.
When the parties married, the plaintiff was attending school full-time on the G.I. bill. He received $350 monthly for his college under the G.I. bill. He has a B.S. in Management in Business Law.
In 1980, the plaintiff was employed at a starting annual salary of $17,000. By 1985, that salary had increased to $23,000 annually. In 1985, he changed jobs and went to work for Ethan Allen starting at $25,000 annually. He remained at Ethan Allen for approximately twelve years. At the end of that twelve year period, he was earning $52,000 annually. He also received a bonus of $6000 when he left Ethan Allen. In 1997, he went to work for Data Profit at a starting salary of $62,000 annually. There is not a bonus program with that employment. He is also reimbursed with mileage with that employment.
The plaintiff has emphysema. He only has one-half of his remaining lung capacity. He receives intravenous injections once a month and that will continue for the rest of his life. He also has asthma. Neither of these conditions prevent him from working.
The plaintiff was born on May 14, 1952.
The plaintiff owns a 1987 Jeep with a value of $1500. That vehicle is in both names, but the parties agree the plaintiff should own it. The defendant's financial affidavit shows a 1990 Pontiac with a value of $4927. That vehicle is also in both names.
The plaintiff has a Fidelity IRA with a balance of $9370.30 as of November 10, 1997, and a Fidelity 401K with a balance of $29,144.69 as of November 30, 1997. All of those funds were acquired during the marriage. When the plaintiff vacated the family home in 1996, he took a $9000 loan against his 401K. That $9000 loan was used, in part, as follows: (1) a payment of $1215 towards attorney's fees; (2) $3000 for an automobile loan; (3) payment of the first and last month's rent; (4) $1200 to $1300 CT Page 10525 was spent for apartment furnishings.
While his financial affidavit shows the Fidelity 401K balance to be $29,144.69, the actual balance is $36,144.69, against which there is the loan balance as of September 30, 1997, of $7803.70. His Fidelity 401K is through Ethan Allen. He is fully vested. The plaintiff's loan against his 401K plan was liquidated on October 30, 1997, and he was to receive a 1099 in January of 1998, indicating the $7803.70 as a taxable distribution to him.
The total of the personal property shown on his financial affidavit, under household items and furniture, includes guns owned by the plaintiff with a fair market value of $400.
The plaintiff's present gross weekly income is $1192. He has deductions for federal income tax of $209, FICA of $91, Connecticut state tax of $51, Medicare of $17, dental/medical of $30, and disability of $2. His net weekly income for child support guideline purposes is $829. He owns personal property with an estimated value of $3000.
The defendant has a B.S. in Nursing which she received before the parties married. When the parties married, she was working full-time as a registered nurse. The defendant has worked part-time at the Danbury Hospital. She has also worked part-time at the New Milford Hospital. She currently works an average of twenty-eight to thirty hours weekly in the Intensive Care Unit at the New Milford Hospital. The court finds that it is in the best interest of the children that the defendant not be required to work full-time at the present time so that she may spend time with the children.
The defendant is in excellent health.
She was born on April 21, 1952.
The defendant's gross weekly income is $680. She has weekly deductions for federal income tax of $119, FICA of $52, Connecticut state tax of $26, and Medicare of $10. Her net weekly income for child support guideline purposes is $470. The Pontiac van that she operates has a fair market value of $4927. She owns miscellaneous household items and furnishings with a value of $5000. She has $547 in her New Milford Savings checking account.
On November 12, 1997, the parties entered into a stipulation, CT Page 10526 coded 125. The parties stipulated to the following facts:
 1. The marital home has a market value of $135,000.00. The mortgage against said property is $96,318.00.
 2. The child support guidelines reflect $238.00 payment per week for two children.
 3. The parties shall have joint custody of the minor children. Mrs. Cound is going to be the primary residential parent with reasonable, liberal, flexible rights of visitation to
 4. The parties are going to file bankruptcy. Bankruptcy should preserve the house and retirement assets.
 In that neither party has been able to pay the balance due to their respective counsel for fees in this matter, and whereas both parties have agreed to file a Chapter 7 bankruptcy petition to discharge their debts after the dissolution of marriage trial, the parties acknowledge that the attorney's fees outstanding in this matter were incurred, or will be incurred, with the knowledge that a bankruptcy petition will subsequently be filed. And that, therefore, the parties agree to remain liable for counsel fees in connection with their dissolution of marriage proceeding after the filing of the bankruptcy petition, as said fees were incurred knowing that a Chapter 7 bankruptcy petition would subsequently be filed.
On August 13, 1998, the parties entered into a further stipulation that provides as follows:
 1. Since the last date that the parties appeared in court they have filed a joint Chapter 7 bankruptcy petition.
 2. On June 17, 1998 the parties were granted a discharge under section 727 of title 11 of the United States Code.
 3. All of the parties' dischargeable debts were discharged, however, an adversary complaint filed by the defendant's prior counsel against both parties, seeking to have their attorney's fees to be determined to be nondischargeable, was filed and is still pending.
 4. It is the expectation of the parties and their present counsel that the adversary complaint will be dismissed, but that CT Page 10527 dismissal has not yet occurred.
 5. The assets of the parties reflected on their financial affidavits at the time of trial were all exempt under the Bankruptcy Code and all remain the assets of the parties.
The family home was purchased in December of 1985 in the names of both parties. The purchase price was $112,000. The parties have also made improvements to the family home since it was purchased.
This court has considered the provisions of § 46b-82
regarding the issues of alimony, and has considered the provisions of § 46b-81(c) regarding the issues of property division, and has considered the provisions of § 46b-56 and § 46b-56a regarding the issues of custody and joint custody and visitation, and has considered the provisions of § 46b-84
and the child support guidelines regarding the issues of support, and has considered the provisions of § 46b-62 regarding the issues of attorney's fees. The court enters the following orders:
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF CUSTODY AND VISITATION
1. The parties shall have joint custody of the minor children. The primary residence of the children is awarded to the defendant. The plaintiff is awarded reasonable, liberal, flexible rights of visitation including alternate weekends and alternate holidays.
C. BY WAY OF SUPPORT
1. The plaintiff is ordered to pay to the defendant support in the amount of $228 per week.
2. The plaintiff is to provide health insurance for the minor children as is available through his place of employment. The parties are to divide equally any uncovered or unreimbursed health expenses.
D. BY WAY OF ALIMONY
CT Page 10528
1. The plaintiff is to pay to the defendant alimony in the sum $100 per week.
2. Alimony is to terminate on the earliest event: (a) the remarriage of the defendant; (b) the death of the plaintiff; (c) the death of the defendant.
3. The provisions of § 46b-86(a) and § 46b-86(b) are applicable.
E. BY WAY OF PROPERTY OF ORDERS
1. The 1987 Jeep shown on the plaintiff's financial affidavit is awarded to the plaintiff.
2. The 1990 Pontiac van shown on the defendant's financial affidavit is awarded to the defendant.
3. All personal property and furniture in the possession of the plaintiff is awarded to the plaintiff, as well as his guns.
4. All personal property and furniture in the possession of the defendant is awarded to the defendant.
5. All bank accounts in the name of the plaintiff are awarded to the plaintiff.
6. All bank accounts in the name of the defendant are awarded to the defendant.
7. The $9000 withdrawal by the plaintiff from his 401K plan is awarded to the plaintiff. The plaintiff's Fidelity IRA is awarded to the plaintiff. The plaintiff's Fidelity 401K plan, with a balance of $29,144 as of November 10, 1997, is ordered divided by QUADRO as follows: (a) the first $14,500 is awarded to the defendant; (b) the next $14,500 is awarded the plaintiff; (c) the balance in the plan, as of the date this decision is filed, is ordered divided equally between the parties.
The defendant is responsible for preparing the QUADRO. The plaintiff is to cooperate in its preparation. The court retains jurisdiction of any disputes that may arise regarding the QUADRO.
8. The court orders that the plaintiff quitclaim to the CT Page 10529 defendant all of his right, title and interest in the family home located at 43 Bridgewater Road, New Milford, Connecticut.
9. The defendant shall have the right to claim the minor child, Courtney, as an exemption for federal and state income tax purposes. The plaintiff shall have the right to claim the minor child, Jason, as an exemption for federal and state income tax purposes for each year in which he is current in his support and alimony payments as of December 31, of such year.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed, by certified mail, return receipt or registered mail, return receipt, for so long as there is an outstanding alimony and/or support order, or any arrearage for either alimony or support.
2. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
3. An immediate wage execution is authorized.
4. All transfers of title are to take place simultaneously on October 8, 1998 at the office of the defendant's attorney.
Axelrod, J.